UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

**MARGARET I. ROBINSON,**

  **Plaintiff,**

v.            **Case No. 2:12-cv-05672**

**RES-CARE, INC.,**

  **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

On August 17, 2011, the plaintiff filed a *pro se* complaint in the Circuit Court of Kanawha County, West Virginia, against ResCare Home Care Corporation, in which she alleged that the defendant "intentionally defamed" her character. (ECF No. 1, at 9.) On September 20, 2011, Southern Home Care Services, Inc., d/b/a ResCare Home Care, removed the action to this court, based on diversity of citizenship. (*Id.*, at 1-2.)

On October 4, 2012, the undersigned conducted a status conference with the plaintiff appearing in person and the defendant appearing by counsel. After discussion of the plaintiff's claims (including the elements of the cause of action for defamation) and the defendant's corporate structure, the name of the defendant was changed to Res-Care, Inc., and the plaintiff was permitted to file an amended complaint. (Order entered October 5, 2012, ECF No. 8.)

On October 25, 2012, the plaintiff filed her Amended Complaint (ECF No. 10) and provided additional information (ECF No. 11). Pending before the court is the defendant's motion to dismiss (ECF No. 13), supported by a memorandum (ECF No.

14). The plaintiff timely filed her response (ECF No. 16) and submitted her affidavit (ECF No. 17). The defendant filed a reply (ECF No. 18).

This action is assigned to the Hon. John T. Copenhaver, Jr., United States District Judge, and referred to the undersigned by standing order (ECF No. 3) for submission of proposed findings and recommendation for disposition.

The context of this case is the termination of the plaintiff's employment by the defendant. Although the plaintiff accused the defendant of race and age discrimination in a proceeding before the U.S. Equal Employment Opportunity Commission, she has been clear in her writings and at the status conference that her action is neither an EEOC action nor a wrongful discharge[1] case. This is purely a case claiming the tort of defamation.

On October 2, 2012, the plaintiff delivered a packet of documents to counsel for the defendant and to chambers staff. At the status conference on October 4, 2012, the parties and the undersigned agreed that the packet of documents would not be filed with the Clerk as the documents contain information which is subject to privacy statutes and regulations. The documents provide helpful background information which will be set forth without including names or health information of third parties. Where there are conflicting facts in the documents, the background information will be phrased in the light most favorable to the plaintiff.

### Background Information

The defendant provides special needs services for developmentally disabled clients in a variety of group homes and in-home settings. The plaintiff is a well-

---

[1] The elements of a wrongful discharge case are set forth in *Harless v. First National Bank in Fairmont*, 246 S.E. 2d 270 (W. Va. 1978). The statute of limitations for a wrongful discharge case is two years. *Corbett v. Duerring*, 726 F. Supp.2d 648, 656 (S.D. W. Va. 2010).

2

educated African American woman who was employed by the defendant as a Direct Care Professional, providing one-on-one caregiving services for a developmentally disabled and blind client residing in a group home.  According to the defendant, one-on-one supervision means that the only time the client is allowed to be out of the direct sight and reach of the caregiver is to allow privacy during toileting.  During all waking hours, the client must be in the immediate proximity of the caregiver.  On June 11, 2011, a client at the group home (who was not in the plaintiff's care) went outside, completely nude.  A neighbor called police, who responded and returned the client to the group home.  The police officer spoke with the responsible caregiver (hereinafter "John Doe"), another employee ("Richard Roe"), and the plaintiff.  The police officer required one of the employees to report the incident to the supervisor of the group home, "S.B."  The police officer also pointed out that the employees had shut off the door alarms, resulting in the client being able to leave the building undetected.  When another officer arrived on the scene, the plaintiff left her client unattended but within her sight while she spoke with the second police officer outside for a few minutes.

"John Doe" wrote an incident report.  "Richard Roe" had a copy of the incident report.  When the supervisor of the group home, "S.B.," learned that the police did not intend to make a formal report, she directed "John Doe" to shred the incident report. "Richard Roe" photocopied the incident report to protect himself if the matter were reported to authorities.  On June 13, 2011, "Richard Roe" wrote a text message to the plaintiff which she quotes in the packet of documents as stating: "['S.B.'] told me that [the Assistant Executive Director] knows about the police coming, but he'd be mad if he knew an incident report was filled out on it.  I guess I'm supposed to believe that."  In her Amended Complaint, the plaintiff quotes the text message as follows: "Supervisor

3

told me last night that [the Assistant Executive Director] knows about the police coming. I said well, why can't I turn in a copy of that incident report then? She said, he'd be mad if he knew an incident report was filled out on it. I'm suppose [*sic*] to believe that." (Amended Complaint, ECF No. 10, at 3-4.)

Some weeks later, the West Virginia Office of Health Facility Licensure and Certification ("OHFLAC") received an anonymous report concerning the June 11 incident and other matters, and notified a corporate affiliate of the defendant ("VOCA"). An investigation was begun. The OHFLAC Surveyor interviewed "Richard Roe" who falsely told the Surveyor that the incident report written by "John Doe" had been shredded and that no other copy existed. On July 28, 2011, the OHFLAC Surveyor contacted the plaintiff; at his request, the plaintiff forwarded to the Surveyor the text message from "Richard Roe" about the incident report. The plaintiff confirmed to the OHFLAC Surveyor that "Richard Roe" and the nurse on duty both had a copy of the incident report. Shortly after she forwarded the text message to the Surveyor, the plaintiff was contacted by VOCA's Human Resources Director, Virgie Stricklen. Ms. Stricklen instructed the plaintiff not to report to work that day, but to report to Ms. Stricklen's office on July 29. On July 29, Ms. Stricklen accused the plaintiff of stealing the incident report and removing it from the building, and placed the plaintiff on administrative leave. The plaintiff denied the allegation. During the July 29 meeting, the plaintiff forwarded to Ms. Stricklen the same text message from "Richard Roe" which she forwarded to the OHFLAC Surveyor. On July 29, Ms. Stricklen also met with "Richard Roe" who told Ms. Stricklen that he had a copy of the incident report and that he made a copy to protect himself from the supervisor, "S.B." "Richard Roe" admitted

4

sending the text message to the plaintiff. "Richard Roe" delivered his copy of the incident report to Ms. Stricklen.

There is no dispute that the plaintiff left her client unattended for a few minutes when she went outside to talk to the second police officer on June 11, 2011. The plaintiff asserts that she had assured the safety of her client, and that she was concerned that another client had left the building and might wander into the street. She asserts that other employees repeatedly left their one-on-one clients for minutes at a time and they were not disciplined for it.

The plaintiff, "John Doe" and "Richard Roe" were all terminated on August 17, 2011. The defendant's reasons for terminating the plaintiff were that she left her client, and she copied and removed company documentation from the site. The plaintiff vehemently denies ever having the incident report or a copy of it in her possession, and she resents being accused of theft. She suggests that her termination may have been in retaliation for her complaints to the union concerning overtime payments.

### Statute of Limitations

The plaintiff appears to make six claims of defamation in her Amended Complaint, although it is difficult to distinguish between the allegedly defamatory statements and the facts she recites. The defendant listed the six claims in the Motion to Dismiss, at pages 2-3, and the plaintiff did not dispute the list in her response. Five of the six claims occurred during the period July 27 through August 5, 2011, more than one year prior to the filing of the plaintiff's original complaint on August 27, 2012. The statute of limitations for a defamation claim is one year. W. Va. Code §§ 55-2-12(c) and 55-7-8(a); *Rodgers v. Corp. of Harpers Ferry*, 371 S.E.2d 358, 361 (W. Va. 1988). Putting aside whether the statements were in fact defamatory (which the defendant

5

disputes), the fact remains that the plaintiff waited too long to bring a lawsuit alleging that she was defamed with respect to these statements.

The plaintiff's response argues that she filed her lawsuit within the time period set forth in the right to sue letter from the EEOC. (ECF No. 16, at 1.) The right to sue letter concerns only the plaintiff's EEOC matter, not any other claim arising out of the termination of her employment.

The undersigned proposes that the presiding District Judge **FIND** that as to statements made prior to August 27, 2011, which the plaintiff believes to be defamatory, the statute of limitations expired and her claims are barred.

## Sixth Claim

The plaintiff alleges that she was defamed by the defendant's response to the EEOC, dated December 12, 2011. The response is contained in the packet of documents referred to above. The statements which the plaintiff's contends are defamatory are these:

> During the investigation, Ms. Robinson admitted she had a copy of the report. * * * Ms. Robinson was terminated on August 17, 2011 as a result of the internal investigation substantiating that she participated in a cover-up of the elopement incident, made a photocopy of the incident report, and left her one-on-one client unattended which is negligence.

The response was signed by the Associate General Counsel of VOCA. As noted, the plaintiff adamantly denies that she had a copy of the report, or that she admitted that she had a copy of the report, or that she was involved in a cover-up. She asserts that her client was in bed, under the covers, when she stepped outside, and was never neglected.

The defendant contends that the statements in the response are subject to absolute immunity pursuant to the litigation privilege because they were made during the course of judicial proceedings before the EEOC. (ECF No. 13, at 15-16.) It cites to

6

*Collins v. Red Roof Inn*, 566 S.E.2d 595 (W. Va. 2002), and 248 F. Supp.2d 512 (S.D. W. Va. 2003), and *Clark v. Druckman*, 624 S.E.2d 864 (W. Va. 2005).

The plaintiff's response points out that her alleged "admission" is not documented in any of the meetings she had with defendant's personnel, and that there was no evidence that she neglected her client. (ECF No. 16, at 3-4.)

West Virginia has long recognized an absolute privilege for relevant communications made in judicial and quasi-judicial proceedings. For example, the Supreme Court of Appeals of West Virginia ruled in *Higgins v. Williams Pocahontas Coal Co.*, 138 S.E. 112, 113 (W. Va. 1927), that a letter to the Workers' Compensation Commission, being relevant to the proceedings, was "absolutely privileged, and its status is not changed by falsity or maliciousness of its statements. It is settled law that the test of a privileged statement is not its truth or good faith, but its relevancy." Similarly, in *Parker v. Appalachian Electric Power Co.*, 30 S.E.2d 1, 4 (W. Va. 1944), the Supreme Court of Appeals noted that "absolutely privileged communications are limited to legislative, judicial and quasi-judicial proceedings and other acts of the State." The EEOC proceedings instituted by the plaintiff are quasi-judicial proceedings; the defendant's response, accordingly, was absolutely privileged and cannot be a source of liability. *Shabazz v. PYA Monarch, LLC*, 271 F. Supp.2d 797, 804 (E.D. Va. 2003) (proceedings before the EEOC are quasi-judicial and statements or information provided by the defendant relevant to these proceedings are absolutely privileged). The undersigned proposes that the presiding District Judge **FIND** that the defendant's communications to the EEOC with respect to the plaintiff are absolutely privileged, even if the statements are not true.

It is apparent that the plaintiff believes that she was treated unjustly when her employment was terminated. She may have a claim for wrongful discharge, but her defamation action must be dismissed for failure to state a claim upon which relief can be granted. It is respectfully **RECOMMENDED** that the defendant's Motion to Dismiss (ECF No. 13) be granted.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de novo</u> review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. <u>Snyder v. Ridenour</u>, 889 F.2d 1363 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to Judge Copenhaver and opposing counsel/party.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy of the same to the plaintiff, and to transmit it to counsel of record.

<u>December 27 , 2012</u>

Mary E. Stanley
United States Magistrate Judge

8